IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(**Baltimore Division**)

| | |
|---|---|
| **HARBOR SIDE GRILL, LLC,**<br>**d/b/a LATITUDE 38°**<br>2824 Solomon's Island Road<br>Suite 200<br>Edgewater, Maryland 21037<br><br>**DOCK ANN, LLC**<br>2824 Solomon's Island Road<br>Suite 200<br>Edgewater, Maryland 21037<br><br>**DOCK ANNA DECK, LLC**<br>2824 Solomon's Island Road<br>Suite 200<br>Edgewater, Maryland 21037<br><br>　　　　Plaintiffs,<br>　　v.<br><br>**CITY OF ANNAPOLIS**<br><u>Serve on:</u><br>Kerry Berger, City Attorney<br>160 Duke of Gloucester Street<br>Annapolis, Maryland 21401<br><br>and<br><br>**THE WHITING TURNER**<br>**CONTRACTING COMPANY**<br><u>Serve on:</u><br>Timothy J. Regan, Resident Agent<br>300 E. Joppa Road<br>Towson, Maryland 21286<br><br>　　　　Defendants. | Case No. _____ |

**COMPLAINT**

Plaintiffs Harbor Side Grill, LLC, d/b/a Latitude 38° ("**Latitude**"), Dock Ann, LLC and Dock Anna Deck, LLC (collectively with Latitude, "**Plaintiffs**"), by their undersigned counsel, files this *Complaint* against Defendants City of Annapolis (the "**City**") and The Whiting Turner Contracting Company ("**Whiting Turner**," and collectively with the City, "**Defendants**") and allege as follows:

**INTRODUCTION**

1. This action arises from an unconstitutional taking of Plaintiffs' property located in Annapolis, Maryland. The City, by and through their agent, Whiting Turner, and without just compensation, has rendered Plaintiffs' property functionally useless, and if permitted to continue, will permanently deprive Plaintiffs of their constitutionally protected property rights and ultimately force Plaintiffs into a state of insolvency.

**THE PARTIES**

2. Plaintiff Harbor Side Grill, LLC is a Maryland limited liability company with its principal place of business in Anne Arundel County, Maryland.

3. Plaintiff Dock Ann, LLC is a Maryland limited liability company with its principal place of business in Anne Arundel County, Maryland.

4. Plaintiff Dock Anna Deck, LLC is a Maryland limited liability company with its principal place of business in Anne Arundel County, Maryland.

5. Defendant City of Annapolis is a municipality duly incorporated under the laws of the State of Maryland, with its leadership functions under the control of the Mayor and Council of the City of Annapolis. In such capacity, the City enters into contracts and agreements on behalf of the City.

6.      Defendant The Whiting Turner Contract Company is a corporation with its principal place of business located in Baltimore County, Maryland.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C.A. § 1983 and claims of violations of Plaintiff's civil rights as guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution.

8.      This court has jurisdiction over the claims pursuant to 28 U.S.C.A. § 1331. This action arises out of the Constitution of the United States of America and alleges violations of constitutionally protected rights of the Plaintiffs who are citizens of the United States of America, or domestic associations.

9.      The claims brought under Maryland common law arise from the same operative nucleus of facts and circumstances that form part of the same case and controversy. Accordingly, the Court has jurisdiction over these supplemental claims pursuant to 28 U.S.C.A. § 1367.

10.     All of the actions of Defendants giving rise to this action substantially occurred in Anne Arundel County, Maryland.

11.     The amount in controversy exceeds the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) exclusive of statutory entitlement to attorney's fees and costs.

**FACTS COMMON TO ALL COUNTS**

12. Since 2015, Latitude has operated a successful restaurant located at 12 Dock Street, Annapolis, Maryland 21401 (the "**Restaurant**"), catering to both locals and tourists.[1] In addition to being well-known for its high-quality food and service, Latitude has historically been praised for its accessibility and views.

13. In May 2025, the City began work on its City Dock Project (the "**Project**"). Upon information and belief, the City retained Whiting Turner to complete the required contracting and construction for the Project.

14. Prior to the initiation of construction, Latitude had a brightly lit and inviting exterior with ample customer parking:



15. Once construction began, Whiting Turner constructed a fence that was a distance from the sidewalk and entrance to Latitude. While the initial fence was an impediment to Latitude's accessibility and had a negative economic impact on Plaintiffs' business, it did not prevent potential patrons from viewing and/or accessing the establishment from the road, and the economic effects were less severe:

---

[1] The building where the Restaurant is located is owned by Plaintiffs Dock Ann, LLC and Dock Anna Deck, LLC.

4



16. On or about October 20, 2025, however, Whiting Turner constructed a fence abutting the sidewalk in front of Latitude, and extending the entire length of the Restaurant:

 

17. Due to the construction of this fence, patrons can no longer see or easily access the front of the restaurant. Further, there is no ability for vehicles to pull close to the entrance to discharge elderly patrons or patrons with disabilities. Additionally, the fencing completely encloses the end of the sidewalk in front of Plaintiffs' property, fully restricting what was previously open access to the dock area. Due to this fencing, the only access to the dock is

5

through a makeshift path behind Plaintiff's property, where Plaintiffs receive deliveries and conduct regular business traffic.

18. Moreover, the activities occurring beyond the fenceline do not appear to serve any legitimate purpose. On January 30, 2026, a representative of Latitude took the following pictures from the top floor of the Restaurant:

 

Rather than being used to shield construction activity, the fence seems to exist for the sole purpose of providing Defendants' employees with considerable private parking space.

19. This invasion of Plaintiffs' property has had an immediate and substantial impact on Plaintiffs' use of the Restaurant. Since the construction of the fence, Latitude has seen a decrease in net sales of nearly 49%. As an example, on Saturday, January 3, 2026, rather than being filled with the steady stream of returning clientele and first-time customers as it would be on a typical Saturday evening, Latitude's dining room was completely vacant:

 

20. The clientele that has returned despite Defendants' interference with the property has noted in public reviews that not only was the restaurant considerably less populated, but specifically that the construction has restricted access to the premises.

21. Latitude currently employs 30 part-time and full-time employees.

22. Due to the significant decrease in traffic caused by the construction of the fence, Latitude will shortly be required to begin layoffs of these employees.

23. In addition to the decrease in dining traffic caused by Defendants' actions, Latitude has seen a significant decrease in party reservations. Many of these cancelling parties have directly informed Latitude that their decision to cancel was entirely predicated on the construction activities of Defendants.

24. Further, the cancellation of major Annapolis events which historically have driven major traffic to the Restaurant will deprive Plaintiffs of significant income that is needed to keep the business afloat.

25. Ultimately, Latitude is in imminent danger of becoming insolvent, an event of default under Plaintiffs' loan documents, in the near future as a direct result of Defendants' actions.

26. On February 6, 2026, concerned with the impact the construction activity and fencing would have on the Restaurant's safety and code compliance, Plaintiffs retained Brian L. Mills, Mechanical Engineer for CED Technologies, Inc. to inspect the property. A true and correct copy of Mr. Mills' report (the "**Report**") is attached hereto as **Exhibit A**.

27. As described in the Report, when the initial fence was constructed, it consisted of only "temporary jersey wall barriers and fencing that restricted the construction zone yet permitted a vehicle travel lane." *See* **Ex. A**, Report at 5. In addition, there was a clearly marked "sidewalk curb along Dock Street [that]was red in color indicating no stopping, no standing, and no parking consistent with the posted signs along the sidewalk length," that was "consistent with a fire-lane for emergency vehicle access." *See id.* The following image demonstrates this initial configuration:



28. On February 9, 2026, Mr. Mills conducted his inspection of the Restaurant and adjacent exterior space. The Report reflects that on the day of the inspection, rather than having the open fire-lane for emergency vehicle access, the "construction perimeter fencing was relocated directly adjacent to the sidewalk's red-painted curb, with no public vehicle access."



*See id.* at 9.

29.     The Report further included the below diagram, representing the "location of the construction perimeter fencing and the sidewalk Means of Egress from [the Restaurant] to the Public Way at Craig Street." *See id.* at 11.



As demonstrated in the diagram, the Restaurant is entirely enclosed by the construction fencing, leaving an approximately 208-foot sidewalk as the only means of egress from the Restaurant. *See id.*

30.     In sum, the Report demonstrates that prior to the construction of the fence along the sidewalk adjacent to the Restaurant, patrons of the Restaurant were provided "direct access from the exit to the public away along with vehicle access along Dock Street," but once the current fence was constructed: (1) the exit discharge path from the Restaurant was constricted to the sidewalk access to Craig Street; (2) the reduction in sidewalk width, and therefore "exit discharge path" width caused by the fencing does not comply with the Anne Arundel County

Fire Prevention Code, 2018 Edition ("**NFPA 1**"); (3) the lack of emergency signage (that was previously present and visible) does not comply with NFPA 1 requirements; (4) the construction perimeter fence gate does not comply with NFPA 1 requirements as it restricts use during an emergent event due to its lock; and (5) the "[u]se of space for material lay-down directly adjacent to the construction perimeter gate restricted emergency vehicle access and may impact emergency service response." *See id.* at 14.

31. Accordingly, the activity of Defendants is not only materially and unconstitutionally impacting Plaintiffs' rights as property and business owners, but are in violation of the City's own ordinances, ultimately jeopardizing the health and safety of Annapolis residents and visitors.

## COUNT I
## 42 U.S.C. § 1983
## VIOLATION OF THE TAKINGS CLAUSE OF THE FEDERAL CONSTITUTION

32. All prior paragraphs of this Complaint are adopted and incorporated by reference as if fully repeated herein.

33. Plaintiffs have a property interest in their ownership of the Restaurant in Annapolis, Maryland.

34. At all times, the City was acting under the color of State law.

35. The actions of the City, through their agent, Whiting Turner, as described herein fail to advance any legitimate purpose and have the effect of denying Plaintiffs the economically viable use of their property and their legitimate investment-backed expectations, all in violation of Plaintiffs' constitutional rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution and the Maryland Constitution, Declaration of Rights, Article 24.

36. The City and Whiting Turner's intrusion on Plaintiffs' property as described herein has rendered Plaintiffs' Restaurant into a state of economic inutility, thereby leaving Plaintiffs with no reasonable use of their property, and inversely acquiring the same as open space, without compensation having been paid, all in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Maryland Constitution, Declaration of Rights, Article 24.

37. Accordingly, Plaintiffs are entitled to just compensation for the temporary taking of their property rights.

## COUNT II
## PRIVATE NUISANCE

38. All prior paragraphs of this Complaint are adopted and incorporated by reference as if fully repeated herein.

39. Plaintiffs have a property interest in their ownership of the Restaurant in Annapolis, Maryland.

40. Defendants' continued infringement of Plaintiffs' property has resulted in substantial and unreasonable interference with Plaintiffs' reasonable use and enjoyment of their property.

41. This infringement has resulted in a decrease in net sales of nearly 49%, loss of goodwill, customer trust, and if permitted to continue, will result in the layoffs of Plaintiffs' employees and force Plaintiffs into insolvency.

42. Defendants' activity does not appear to serve any legitimate purpose in furtherance of the Project.

43. Further, Defendants' activity is in violation of City ordinances, jeopardizing the health and safety of Plaintiffs' employees and invitees.

44. As a direct and proximate result of Defendants' invasion and infringement, Plaintiffs have suffered significant damages, which continue to accrue.

WHEREFORE, Plaintiffs respectfully request the entry of judgment against the Defendants, jointly and severally, as follows:

(a) a declaration pursuant to 28 U.S.C.A. § 2201 that all actions in pursuit of a taking and inverse condemnation in respect of Plaintiffs' property are in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

(b) judgments in their individual favor for just compensation and damages as a result of Defendants' takings of Plaintiffs' property rights;

(c) a declaration pursuant to 28 U.S.C.A. § 2201 that all actions in pursuit of a taking and inverse condemnation in respect of Plaintiffs' property are null and void and of no force and effect;

(d) just compensation, compensatory damages, consequential damages, punitive damages, incidental damages, interest, costs of suit, and counsel fees pursuant to 42 U.S.C.A. § 1988 and any other applicable statues or laws; and

(e) any other relief that the Court may deem appropriate and necessary in this matter.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: February 20, 2026 | WHITEFORD TAYLOR & PRESTON LLP |
| | |
| | /s/ Charles L. Simmons, Jr. |
| | Charles L. Simmons, Jr. (Bar No. 24278) |
| | C. Andrew Barnes (Bar No. 30561) |
| | Seven Saint Paul Street, 15th Floor |
| | Baltimore, Maryland 21202 |
| | Telephone:     410.347.9491 |
| | Facsimile:     410.234.2345 |
| | E-Mails:       csimmons@whitefordlaw.com |
| |                 anbarnes@whitefordlaw.com |
| | |
| | *Counsel for Plaintiffs* |